# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:23-cv-61136-LEIBOWITZ/STRAUSS

**KEISHA JOHNSTON-GEBRE**,

     *Plaintiff,*

*v.*

**IH4 PROPERTY FLORIDA, L.P.,** *et al.*,

     *Defendants.*

_____/

**IH4 PROPERTY FLORIDA, L.P.,** *et al.*,

     *Third-Party Plaintiffs,*

*v.*

**SMS ASSIST, L.L.C.**,

     *Third-Party Defendant.*

_____/

### <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court on Plaintiff Keisha Johnston-Gebre's ("Johnston-Gebre") Motion for Partial Summary Judgment on the Issue of Liability [ECF No. 156], Defendants IH4 Property Florida, L.P., and THR Property Management, L.P. d/b/a Invitation Homes' (collectively, "IH4") Motion for Partial Summary Judgment [ECF No. 154], Third-Party Defendant SMS Assist, L.L.C.'s ("SMS") Motion for Summary Judgment [ECF No. 152], and IH4's Motion for Leave to File Second Amended Third-Party Complaint [ECF No. 191]. Each party has submitted a response to the motions [ECF Nos. 158, 162, 164, 195] and replies [ECF Nos. 169, 172, 174, 197]. For the following reasons, Johnston-Gebre's Motion [ECF No. 156] is GRANTED in part and DENIED in part; IH4's Motion [ECF No. 154] is DENIED; SMS's Motion [ECF No. 152] is DENIED; and IH4's Motion to Amend [ECF No. 191] is DENIED.

## BACKGROUND

IH4 owns and manages 35,000 properties across Florida, respectively.  [Joint Statement of Undisputed Facts, ECF No. 194 ¶ 1].  On January 23, 2015, Johnston-Gebre signed a one-year lease agreement with IH4 for a dwelling in Weston, Florida ("the Lease"), where she resided with her child, I.G.  [*Id.* ¶ 2].  The Lease required Johnston-Gebre to provide a security deposit of $4,200.  [*Id.* ¶ 3].  The Lease was renewed multiple times, with the latest term spanning from December 1, 2021, to November 30, 2022.  [*Id.* ¶ 4].  IH4 delegated its property maintenance and repair responsibilities to THR, which acted as its "authorized agent."  [*Id.* ¶ 8].  THR then contracted with SMS to manage day-to-day repair requests from IH4 tenants.  [*Id.* ¶¶ 9–10; 29–47].  During Johnston-Gebre's tenancy, IH4 had two policies to prevent and mitigate mold growth, which required prompt investigation of mold sources and communication with tenants.  [*Id.* ¶¶ 11–12].

The City of Weston issued a citation to IH4 for the property where Johnston-Gebre resided, identifying violations of two local ordinances – § 129.06 (minimum standards for light) and § 129.08 (minimum standards for protection against the elements) and required (1) inspection of the electrical panel, outlets, and wires by a certified electrician to ensure safety, and (2) roof repairs to prevent leaks.  [*Id.* ¶ 14].  On June 15, 2022, Johnston-Gebre hired an inspector who found mold in her dwelling, after which IH4 received the inspector's report and did not conduct an independent mold assessment.  [*Id.* ¶¶ 15–17].  In July 2022, the City of Weston sent IH4 an email outlining the necessary corrective actions: obtaining a permit, replacing mold-damaged drywall, hiring a certified electrician, and engaging a licensed roofer.  IH4, through SMS, hired contractors to conduct repairs.  [*Id.* ¶¶ 18–19, 43–45].

Johnston-Gebre arranged for another mold test in August 2022, which indicated that mold was still present.  [*Id.* ¶¶ 20–21].  Johnston-Gebre and I.G. vacated the dwelling on September 7, 2022, and IH4 waived rent from September 8, 2022, through the Lease's end on November 30,

2022. [*Id.* ¶¶ 22–23]. I.G. had experienced medical ailments, and her physician recommended that she move out of the dwelling. [*Id.* ¶¶ 25–26]. IH4 sent a security deposit refund in the amount of $867.14 to Johnston-Gebre's former attorney. [*Id.* ¶ 28].

Johnston-Gebre then filed this instant lawsuit against IH4 and THR, bringing six counts: (1) breach of contract, (2) constructive and unlawful eviction, (3) nuisance, (4) negligence, (5) violations of the Florida Residential Landlord and Tenant Act, and (6) retaliatory eviction in violation of the Florida Residential Landlord and Tenant Act. [Am. Compl., ECF No. 12]. Then, IH4 and THR filed a Third Party Complaint against SMS [*see* Third Party Compl., ECF No. 36; Am. Third Party Compl., ECF No. 82], who then filed another Third Party Complaint against its various contractors [ECF No. 84]. This Court stayed the Third-Party Complaint against SMS's contractors until resolution of the underlying disputes between Johnston-Gebre and IH4 and between IH4 and SMS. [ECF No. 196].

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings," and present competent evidence "showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (citing *Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" cannot support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

## I.    Plaintiff Johnston-Gebre's Motion for Partial Summary Judgment [ECF No. 156]

Plaintiff Johnston-Gebre moves for summary judgment for all six claims: Breach of Contract (Count I), Constructive Eviction (Count II), Nuisance (Count III), Negligence (Count IV), Violation of Residential Landlord Tenant Act (Counts V and VI). [Johnston-Gebre Mot., ECF No. 156]. Defendants IH4 and THR (collectively, "IH4") respond to Johnston-Gebre's Motion claiming, as to all counts, that Johnston-Gebre's Motion fails in its entirety because of disputed issues of material fact relating to their alleged maintenance obligations and responds to the arguments on each count. [IH4 Resp., ECF No. 158]. This Court considers each count in turn.

4

a.   Johnston-Gebre Is Not Entitled to Summary Judgment on Breach of Contract (Count I).

Johnston-Gebre argues that she is entitled to summary judgment on her breach of contract claim against IH4 because (1) IH4 materially breached the Lease by failing to maintain the property in a habitable condition and (2) breached the Lease by failing to return the security deposit as required.  [Johnston-Gebre Mot. at 2–6].  Johnston-Gebre's Motion fails to convince this Court that she is entitled to summary judgment on these grounds.

"To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages."  *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017).  It is undisputed that Johnston-Gebre and IH4 entered into the Lease, satisfying the first element.  [*See* Joint Statement of Undisputed Facts ¶¶ 2–4].  "To constitute a material breach, a party's nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part[.]"  *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1298 (S.D. Fla. 2011), *aff'd in part, question certified*, 720 F.3d 833 (11th Cir. 2013), *certified question answered*, 143 So. 3d 881 (Fla. 2014), *and aff'd*, 579 F. App'x 700 (11th Cir. 2014).

Johnston-Gebre directs this Court to the Lease's language that assigns IH4 the responsibility to make all "Major Repairs" that impact habitability as determined, in relevant part, by "Applicable Law."[1]  [Johnston-Gebre Mot. at 2–4].  The Lease states that:

> Maintenance and repairs of items that significantly impact habitability of the Residence as determined by Landlord in its sole and absolute discretion, or by Applicable Law, shall be deemed "Major Repairs."  Landlord shall be responsible for Major Repairs, including repairs to heating or air conditioning systems, roofing, and mechanical, electrical, and defective plumbing systems.

[Lease, ECF No. 157-6 ¶ 13.1].  Johnston-Gebre claims that because the City of Weston cited IH4

---

[1]    "Applicable Law" means "all laws, ordinances, directives, temporary orders, and rules and regulations enacted now or hereinafter by any governmental authority with jurisdiction over the Residence."  [Lease, ECF No. 157-6 ¶ 3.1].

for code violations, which led IH4 to determine that the property was uninhabitable after retaining contractors to conduct repairs, "no reasonable jury could find that IH4 did not materially breach the lease." [Mot. at 3–4; Joint Statement of Undisputed Facts ¶¶ 14, 18–19].

In response, IH4 argues that Johnston-Gebre had an obligation under the Lease to "immediately report to Landlord, in writing, conditions posing any problem, failure, malfunction, or damage at the Residence" and because there is a genuine dispute as to whether she provided this notice, summary judgment is inappropriate. [IH4 Resp. at 4–6 (citing Lease ¶ 13.2)]. Johnston-Gebre claims to have alerted IH4 to issues with her dwelling on numerous occasions. [*See* Johnston-Gebre Statement of Material Facts ¶¶ 17, 26]. IH4 also argues that a landlord must have an opportunity to cure any damage caused by a condition before it can be held liable, and whether they acted reasonably is a disputed issue of fact that cannot be decided on summary judgment. [IH4 Resp. at 6–10].

This Court does not believe summary judgment is appropriate at this juncture on this issue. First, whether, and to what extent, Johnston-Gebre gave notice to IH4 about the relevant faulty conditions of her dwelling, which would constitute "Major Repairs" under the Lease, is disputed. [*See* IH4 Response to Johnston-Gebre Statement of Material Facts, ECF No. 159 ¶ 17, 26]. As the Lease required Johnston-Gebre to immediately report to IH4 all conditions posing any problem or damage at the residence, it is a genuine issue of material fact for trial whether Johnston-Gebre satisfied any obligation she had under this clause. Additionally, without specificity as to Johnston-Gebre's complaints to IH4 and citations to the Applicable Law of the City of Weston, this Court cannot definitively determine whether the conditions in her apartment fell under the Applicable Law, which would have triggered IH4's duties to make the Major Repairs. Finally, it is undisputed that IH4 performed some repairs and made an effort to perform others, but eventually determined that the dwelling was not habitable. [*See* Joint Statement of Undisputed Facts ¶ 19; Johnston-Gebre

Mot. at 4; Johnston-Gebre Statement of Material Facts ¶¶ 33–34].  Whether these efforts by IH4 satisfied their duty to make "Major Repairs," and to what extent, is a factual determination that this Court, on this record, is unable to make.[2]  Therefore, this Court cannot grant summary judgment to Johnston-Gebre on this ground of her breach of contract claim.

Johnston-Gebre also moves for summary judgment on her breach of contract claim by arguing that "IH4 materially breached the lease agreement by failing to return the security deposit as required."  [Johnston-Gebre Mot. at 4 (citing Fla. Stat. § 85.56(1)(a) ("If the landlord's failure to comply renders the dwelling unit untenantable and the tenant vacates, the tenant shall not be liable for rent during the period the dwelling unit remains uninhabitable."))].  The Lease required Johnston-Gebre to provide a security deposit of $4,200, which could be used, "as permitted by law, to cover costs for necessary repairs beyond normal wear and tear or to settle any unpaid rent and other charges owed by the tenant."  [Joint Statement of Undisputed Facts ¶¶ 3, 7].  Instead of the full $4,200 amount, "[a] security deposit refund of $867.14 was sent to Plaintiff's former attorney."  [*Id.* ¶ 28].  This argument, however, is dependent on Johnston-Gebre's disputed fact that IH4 determined the dwelling was uninhabitable-- as IH4 only has to return the portion of the security deposit kept for unpaid rent when the dwelling is determined to be uninhabitable.  [*See* Johnston-Gebre Statement of Material Facts ¶ 38; IH4 Resp. to Johnston-Gebre Statement of Material Facts ¶ 38].  Whether, and when, Johnston-Gebre's dwelling was officially uninhabitable is a factual determination that this Court is unable to determine on this record.  Because of this, the Court cannot determine whether, or to what extent, Johnston-Gebre suffered damages by IH4's alleged

---

[2]      It should be noted that Johnston-Gebre only moves for summary judgment for her breach of contract action based on IH4's failure to make Major Repairs, and not based on whether her dwelling satisfied Florida's implied warranty of habitability; thus, this Court does not address that issue here.  Regardless, Johnston-Gebre's motion fails to present this Court at summary judgment with sufficient evidence that IH4's actions necessarily violated the implied warranty of habitability.  *See Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, 792 F. Supp. 1566, 1574 (S.D. Fla. 1992).

breach of the Lease.  Therefore, this Court cannot at this juncture grant Johnston-Gebre summary judgment on this issue.

    b.   <u>Johnston-Gebre Is Not Entitled to Summary Judgment on Constructive Eviction (Count II).</u>

Johnston-Gebre next moves for summary judgment on her Constructive Eviction count, claiming that "[t]he evidence unequivocally demonstrates that [IH4] failed to maintain the property in a habitable condition (i.e., wrongful act), rendering it unsuitable for occupancy."  [Johnston-Gebre Mot. at 6].  A constructive eviction is a "wrongful act by the landlord which, though not amounting to an actual eviction, is done with the express or implied intention of interfering with the tenant's beneficial enjoyment of the leased property."  *Stinson, Lyons, Gerlin & Bustamante, P.A. v. Brickell Bldg. 1 Holding Co.*, 923 F.2d 810, 815 (11th Cir. 1991) (citing *Hankins v. Smith*, 138 So. 494, 496 (Fla. 1931)).  Further, a constructive eviction occurs "whereby the leased premises are rendered unsafe, unfit, or unsuitable for occupancy in whole, or in substantial part, for the purposes for which they were leased."  *Kaplan v. McCabe*, 532 So. 2d 1354, 1356 (Fla. Dist. Ct. App. 1988).  "Whether constructive eviction has occurred is a question of fact."  *Stinson, Lyons, Gerlin & Bustamante, P.A.*, 923 F.2d at 815.

This Court cannot grant summary judgment on Johnston-Gebre's constructive eviction claim, because this determination depends on various disputed facts including the extent and timing of damage in Johnston-Gebre's dwelling.  [*See, e.g.*, IH4 Resp. to Johnston-Gebre Statement of Material Facts ¶¶ 26, 27, 28, 30, 36, 38].  A constructive eviction claim can only be found in this case after a fact-finder determines that the dwelling was sufficiently unsuitable for occupancy.  Accordingly, Johnston-Gebre's motion for summary judgment is denied on her constructive eviction claim.

    c.   <u>Johnston-Gebre Is Not Entitled to Summary Judgment on Nuisance (Count III).</u>

Johnston-Gebre next argues that she is entitled to summary judgment on her nuisance claim,

whether classified as public or private.  [*See* Johnston-Gebre Reply, ECF No. 169 at 8].  However, Johnston-Gebre fails to convince this Court of her argument here as well.

The law of private nuisance is dependent "on the fundamental rule that every person should so use his own property as not to injure that of another[.]"  *Jones v. Trawick*, 75 So. 2d 785, 787 (Fla. 1954).  "Anything which annoys or disturbs one in the free use, possession, or enjoyment of his property, or which renders its ordinary use or occupation physically uncomfortable, is a 'nuisance' and may be restrained."  *Id.*  Importantly, "integral to the notion of a private nuisance is the _use_ of one's property in a way that is somehow _adverse_ to another's interest in _their_ property."  *Karpel v. Knauf Gips KG*, No. 21-24168-CIV, 2022 WL 4366946, at *7 (S.D. Fla. Sept. 21, 2022) (emphasis in original) (citing *Durrance v. Sanders*, 329 So. 2d 26, 29 (Fla. Dist. Ct. App. 1976)); *see* 38 Fla. Jur. 2d *Nuisances* § 1 ("[N]uisance, in law, generally consists of using one's property so as to injure the land or some incorporeal right of one's neighbor."); § 67:7.  Common law causes of action—Nuisance, 6 *Litigating Tort Cases* § 67:7 (noting the "historic role that the law of private nuisance has played as a means of efficiently resolving conflicts between neighboring, contemporaneous land uses.").  Private nuisance is generally 'restricted to situations involving *discordant* land uses[.']"  *Jerue v. Drummond Co., Inc.*, No. 8:17-CV-587-T-17AEP, 2017 WL 10876737, at *13 (M.D. Fla. Aug. 17, 2017) (emphasis in original) (noting nuisance law is not "an additional type of consumer protection for purchasers of realty.") (citing *Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 314 (3d Cir. 1985)).

Nothing in the record, or Johnston-Gebre's motion, convinces this Court that a private nuisance claim fits the facts of this case.  Private nuisance law is a means to recover when a neighbor uses their land in a way that negatively impacts the plaintiff – not when a landlord allows a property to fall in disrepair, and no case which Johnston-Gebre cites is analogous at all to the facts at hand.  [*See* Johnston-Gebre Mot. at 7–9 (citing, among others, *Jones*, 75 So. 2d at 786 (deciding whether "a cemetery proposed to be located in a predominantly residential area may be enjoined as a private

nuisance by the adjacent home owners.") and *Durrance*, 329 So. 2d at 28 (private nuisance claim was based on "smoke, odors, and pollution emanating from compost dumped by the other appellants on property owned by appellant Whitehurst adjacent to that belonging to appellees."))].  Accordingly, Johnston-Gebre has presented this Court with no facts to allow it to grant summary judgment in her favor on her private nuisance claim.

A public nuisance, on the other hand, is "classified as something that causes any annoyance to the community or harm to public health."  *Flo-Sun, Inc. v. Kirk*, 783 So. 2d 1029, 1036 (Fla. 2001) (internal quotation marks omitted).  Johnston-Gebre cites *State ex rel. Brown v. Sussman*, 235 So. 2d 46, 48 (Fla. Dist. Ct. App. 1970), to argue that IH4 should have corrected the uninhabitable conditions of her apartment that constituted Major Repairs.  However, the court in *Brown* held that a public nuisance claim is not necessarily barred when the plaintiffs were tenants of the landlord-defendant and the entire apartment complex was in disrepair.  *Id.* at 47.  Unlike in *Brown* though, Johnston-Gebre's claim is only about the conditions in her own apartment and has presented this Court with no facts to suggest that IH4 left the entire apartment complex in a state of disrepair that diminished her interest in her apartment.  Thus, Johnston-Gebre does not convince this Court that she is entitled to summary judgment on her public nuisance claim.

However, this Court does not grant summary judgment in favor of IH4 on Johnston-Gebre's nuisance claim either-- because no argument was made to this Court that these Defendants are entitled to summary judgment on this ground.  [*See generally* IH4 Mot.]; *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) ("[I]n both civil and criminal cases, in the first instance and on appeal[, ] we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").  This issue is thus better suited for a motion for directed verdict after trial.

d.   <u>Johnston-Gebre Is Partially Entitled to Summary Judgment on Negligence (Count IV).</u>

Johnston-Gebre moves for summary judgment on three elements of her negligence claim against Defendants IH4 and THR – duty, breach, and causation.   [Johnston-Gebre Mot. at 9–12]. To prove a negligence claim, a plaintiff must show:  "(1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury."  *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1339 (S.D. Fla. 2018).

Johnston-Gebre first argues that IH4 had a legal duty to maintain the premises in a habitable condition.   [Johnston-Gebre Mot. at 9].   In Florida, a landlord has a duty to repair a defective condition in its apartment, even if the condition is not inherently dangerous.  *See Grant v. Thornton*, 749 So. 2d 529, 532 (Fla. Dist. Ct. App. 1999) (noting that failure to comply with county building codes is evidence of negligence).   Additionally, landlords have a duty to comply with the requirements of applicable building, housing, and health codes.  Fla. Stat. § 83.51(1)(a).  Thus, it is clear that IH4, as Johnston-Gebre's landlord, had a duty to comply with all local ordinances and had a duty to repair any defective condition in her apartment.   This Court will accordingly grant summary judgment in favor of Johnston-Gebre on this ground.

THR, separately from IH4 here, argues that because it was not Johnston-Gebre's landlord (it was the property manager instead), it had no legal duty to Johnston-Gebre.   However, courts in Florida have found that property managers who contract with landlords owe tenants a duty to repair when the tenants give notice of the condition to the property manager.  *See Perez v. Belmont at Ryals Chase Condo. Ass'n, Inc.*, 393 So. 3d 859, 861 (Fla. Dist. Ct. App. 2024).   Thus, even though THR was not Johnston-Gebre's landlord, because it contracted with IH4 it owed Johnston-Gebre a duty to repair, and this Court grants summary judgment in favor of Johnston-Gebre on this point as well. Both IH4 and THR, as a matter of law on this record, had a legal duty to repair defective conditions

in her dwelling.

Next, Johnston-Gebre moves for summary judgment on the breach element, arguing that because the City of Weston cited Defendants for code violations, this Court should grant summary judgment and state that IH4 breached their duty of care to Johnston-Gebre.  [Johnston Gebre Mot. at 11].  However, as discussed above, the timing and extent of Johnston-Gebre's notice to IH4 are disputed; and when material facts are disputed, the question of breach is a question for the factfinder.  *Marriott Int'l, Inc. v. Perez-Melendez*, 855 So. 2d 624, 628 (Fla. Dist. Ct. App. 2003) ("Whether the duty, once established, has been breached by the defendant and whether that breach proximately caused the plaintiff's injuries are generally issues of fact to be resolved by the jury[.]").  Thus, this Court cannot grant summary judgment to Johnston-Gebre on the element of breach.

Finally, Johnston-Gebre moves for summary judgment on causation, claiming that "Defendants' failure to maintain the premises was the direct cause of Plaintiffs' injuries and damages."  [Johnston-Gebre Mot. at 12].  Generally, in Florida, "proximate causation is a question of fact."  *Cheeks v. Dorsey*, 846 So. 2d 1169, 1171 (Fla. Dist. Ct. App. 2003) (citing *McCain v. Fla. Power Corp.*, 593 So.2d 500, 501 (Fla. 1992)); *see Kafie v. Nw. Mut. Life Ins. Co.*, 834 F. Supp. 2d 1354, 1365 (S.D. Fla. 2011).  Johnston-Gebre's motion is insufficient to convince this Court that there are no genuine issues of material fact relevant to causation so as to justify granting summary judgment.  Instead, she merely states that-- had IH4 properly maintained the property and addressed the hazardous conditions-- she would not have suffered injuries, experienced property damage, or endured emotional distress.  [Johnston-Gebre Mot. at 12].  These statements fail to establish no genuine issue of material fact that Johnston-Gebre's injuries were proximately caused by IH4.  Additionally, as discussed above, the extent and sufficiency of IH4's response to Johnston-Gebre's notice of damage in her apartment is itself a disputed issue of material fact that this Court cannot determine on this record.  Accordingly, summary judgment must be denied on the issue of

causation.

    e.   <u>Johnston-Gebre Is Not Entitled to Summary Judgment on Her Claims Under the Florida Residential Landlord and Tenant Act (Counts V and VI).</u>

Johnston-Gebre also moves for summary judgment on her claims for violation of the Florida Residential Landlord and Tenant Act ("FRLTA"), Fla. Stat. § 83.001, *et seq.* FRLTA "imposes definite obligations upon the landlord which continue throughout the term of the lease and which did not exist under the common law." *Paterson v. Deeb*, 472 So. 2d 1210, 1216 (Fla. Dist. Ct. App. 1985). As discussed above, landlords must comply with all applicable building, housing, and health codes under FRLTA. Fla Stat. § 83.51. In effect, § 83.51, Florida Statutes, creates "a statutory warranty of habitability." *Grant v. Thornton*, 749 So. 2d 529, 531 (Fla. Dist. Ct. App. 1999). Johnston-Gebre argues that because the property experienced significant disrepair despite her repeated complaints, and because IH4 failed to take corrective measures until the City of Weston cited IH4 for code violations, IH4 violated FRLTA. [Johnston-Gebre Mot. at 13].

This argument fails for the same reasons as stated above– the extent and timing of Johnston-Gebre's notice to IH4 of the defective conditions in her apartment is a disputed issue of material fact that should be determined at trial, not by this Court at summary judgment. Certainly, citations issued by the City of Weston to IH4 may, at trial, support a finding that IH4 violated FRLTA, but it is too early to determine that on this record.

Johnston-Gebre also moves for summary judgment under FRLTA claiming that IH4 should have returned her full security deposit under § 83.49, Florida Statutes, because it acknowledged her dwelling was uninhabitable. [*Id.* at 13–14]. However, as explained earlier, this Court cannot determine whether, when, and to what extent Johnston-Gebre's dwelling was uninhabitable, and this determination is for the trier of fact. *See supra.* Accordingly, this Court declines to grant summary judgment on this issue.

Johnston-Gebre's final argument is that this Court should grant summary judgment in her

favor for her FRLTA counts, concluding that she suffered damages resulting from IH4's actions. [*Id.* at 14]. This argument fails as well. Because IH4 disputes Johnston-Gebre's damages, and without a finding that IH4 violated FRLTA, this Court is unwilling to grant summary judgment on the damages element of Johnston-Gebre's FRLTA claim. [*See* IH4 Response to Johnston-Gebre Statement of Material Facts ¶ 40,46, 48].

## II.   Defendants' Motion for Partial Summary Judgment [ECF No. 154]

IH4 asks this Court to grant summary judgment in their favor on three grounds: (1) Johnston-Gebre cannot establish personal injury damages; (2) Johnston-Gebre cannot recover damages for pain and suffering; and (3) IH4 properly processed the security deposit. [IH4 Mot. at 6–10].

### a.   Personal Injury Damages

The main thrust of IH4's argument here is that Plaintiff offers no reliable evidence of general causation that mold can cause the types of diseases from which I.G. suffers. [IH4 Mot. at 7–8]. In support of this argument, IH4 cites to testimony of I.G.'s treating doctors who stated that I.G.'s asthma was exercise-induced and that her rhinitis was caused by pollen. [*Id.* at 8]. Johnston-Gebre responds that even if the mold did not cause I.G.'s ailments, it exacerbated her existing medical issues, which is actionable in Florida. [Johnston-Gebre Resp., ECF No. 164 at 6–7].

Such determinations-- whether I.G.'s medical issues were caused or exacerbated by IH4-- are better left to the factfinder who can weigh the evidence and credibility of the various doctors relevant to this case.[3] Johnston-Gebre will have the opportunity at a trial to prove that mold caused or exacerbated I.G.'s injuries. Thus, IH4's argument for summary judgment on this ground is

---

[3]     Defendants' citation to *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984), is inapposite. There, the Florida Supreme Court discussed when a court could direct a verdict *after trial*, not when it could order summary judgment if causation was not proved. Here, this Court takes no position as to whether causation is proved or not (because it is not the factfinder).

rejected.

Nor does IH4's citation to *McClain v. Metabolife Int'l, Inc.* 401 F.3d 1233, 1237 (11th Cir. 2005), change the conclusion on this point.  IH4 cites to *McClain* to argue that Johnston-Gebre must hire an expert witness to prove damages in this case.  However, *McClain* dealt with a toxic tort where the plaintiffs contended that "the toxic combination of ephedrine and caffeine in the Metabolife 356 that they ingested harmed them. . . .   Plaintiffs [needed to] prove the toxicity of the ephedrine/caffeine combination and that it had a toxic effect on them causing the injuries that they suffered[.]"  *Id.*  These facts are far more complicated than the facts at issue here– whether mold (that was indisputably present) caused or exacerbated I.G.'s injuries.  [Joint Statement of Undisputed Facts, ECF No. 194 ¶ 16].  While expert testimony may certainly aid Johnston-Gebre's endeavors here, this Court is aware of no authority that expert testimony is required to prove her claims.

b.  <u>Pain and Suffering</u>

IH4 next argues that Johnston-Gebre cannot recover pain and suffering damages because these types of damages are precluded by the "impact rule."  [IH4 Mot. at 9].  Johnston-Gebre responds that because IH4 did not state the impact rule as an affirmative defense, they waived the right to assert it now.  [Johnston-Gebre Resp. at 9].

Johnston-Gebre's response is insufficient to convince this Court that IH4 waived their right to make an argument concerning the impact rule.  The only case cited is *Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1971), which does not concern Florida's impact rule, but rather states that collateral estoppel and res judicata are affirmative defenses that must be pleaded.  Those two affirmative defenses are mentioned in Rule 8(c) of the Federal Rules of Civil Procedure (under estoppel) as examples of defenses that must be pleaded.  Thus, *Blonder-Tongue* does not address the issue at hand and Johnston-Gebre has presented this Court with no authority to convince it that failure to plead the impact rule as an affirmative defense waives that party's right to

15

making an argument under it.

Florida's impact rule "bars a claim for mental or emotional damages caused by a defendant's negligence unless (1) the plaintiff sustained a physical impact from an external source, (2) the claim arises from a situation in which the 'impact' requirement is relaxed and the plaintiff manifests a significant discernible physical injury or illness as a result of the emotional trauma, or (3) one of the narrow exceptions to the impact rule applies rendering the rule inapplicable." *Pipino v. Delta Air Lines, Inc.*, 196 F. Supp. 3d 1306, 1315 (S.D. Fla. 2016). However, "Florida's impact rule does not apply to cases where the tortfeasor's negligence may be characterized as willful and wanton." *Brady v. SCI Funeral Servs. of Fla., Inc.*, 948 So. 2d 976, 978 (Fla. Dist. Ct. App. 2007). "The line between simple and gross negligence is a matter of degree and fact-specific, and when the distinction between the two is unclear, the question should be submitted to the jury." *Elec. Boat Corp. v. Fallen*, 343 So. 3d 1218, 1221 (Fla. Dist. Ct. App. 2022) (Cohen, J., concurring) (citing *Courtney v. Fla. Transformer, Inc.*, 549 So. 2d 1061, 1065 (Fla. Dist. Ct. App. 1989)). Thus, because this Court is unable on this record to determine whether IH4 engaged in negligence or gross negligence, or no negligence at all, this Court is unwilling to state as a matter of law that Johnston-Gebre cannot recover pain and suffering damages due to the impact rule.

c. Security Deposit

Finally, IH4 argues that because they complied with Florida law in notifying Johnston-Gebre of their intent to impose a claim on Johnston-Gebre's security deposit, and because Johnston-Gebre did not object, Johnston-Gebre is not entitled to the return of her security deposit. [IH4 Mot. at 9–10]. Johnston-Gebre, on the other hand, argues that because her dwelling was uninhabitable and she vacated, she should not be liable for rent during the period the dwelling remains uninhabitable. [Johnston-Gebre Resp. at 15 (citing Fla. Stat. § 83.56(1)(a)).

IH4's argument must be rejected here, because it rests on a disputed material fact. [*Compare*

16

IH4's Statement of Material Facts, ECF No. 155 ¶ 5 with Johnston-Gebre's Statement of Material Facts Submitted in Opposition, ECF No. 165 ¶ 5]. While IH4 states that Johnston-Gebre failed to pay rent, Johnston-Gebre states that the parties agreed that Johnston-Gebre was not required to pay rent. Depending on what the factfinder believes and credits, Johnston-Gebre may be entitled to her security deposit. Thus, this Court cannot, on this record, grant summary judgment on this point.

### III.   Third-Party Defendant SMS Assist, L.L.C.'s Motion for Summary Judgment [ECF No. 152]

SMS moves for Summary Judgment against Defendants IH4 and THR as to all claims brought against it. IH4 brought a two-count third-party complaint against SMS alleging breach of contract and indemnification. [Am. Third-Party Compl., ECF No. 82]. SMS argues that (1) there is no evidence to support a breach of contract, (2) there is no evidence to support IH4's entitlement to indemnification from SMS, and (3) SMS is entitled to reasonable attorneys' fees. [SMS Mot., ECF No. 152]. After a review of SMS's arguments, and IH4's response, this Court finds that disposition of these claims depends on disputed issues of fact such that summary judgment is inappropriate.

SMS's entire argument as to why it is entitled to summary judgment on the breach of contract claim rests on disputed facts; as such, this Court cannot grant summary judgment. For example, SMS claims that the Rule 30(b)(6) deposition testimony from Randolph Allan Gray, IH4's Senior Vice President, "establishes that there was nothing wrong, incomplete, inadequate or otherwise deficient about any of the reactive maintenance services provided by independent contractors engaged by SMS to provide home maintenance services at Plaintiff's Residence pursuant to 20 of the 21 Reactive Services Work Orders[.]" [SMS Mot. at 11 (citing ECF No. 153 ¶ 22); Joint Statement of Undisputed Facts ¶ 46]. This fact is disputed by record evidence submitted by IH4. [*See* ECF No. 163 ¶ 22 (disputing that "Mr. Gray had information to make a determination whether work was performed negligently, incompletely or inadequately. Mr. Gray had limited or no information available to him[.]")]. This trend continues with virtually all of SMS's arguments and

citations to its own statement of material facts.  [*Compare* SMS Mot. at 12–13 (citing ECF No. 153 ¶¶ 5, 6, 12, 13, 14, 23, 24, 25, 26) with ECF No. 163 ¶¶ 5, 6, 12, 13, 14, 23, 24, 25, 26].  Determining whether SMS or its contractors acted negligently (which would be a violation of the underlying contract between SMS and IH4) is a factual determination which this Court in unable to perform on this record.  Accordingly, this count must go to trial and summary judgment is denied.

Next, SMS asks this Court to grant summary judgment on IH4's indemnification claims, "for all of the same reasons," as its argument on the breach of contract claim.  [SMS Mot. at 16].  SMS argues that the "record is devoid of any evidence of negligence or willful misconduct on the part of SMS, or its officers, agents, contractors or representatives, that would entitle Invitation Homes to indemnification from SMS[.]"  [*Id.*].  Because this Court denied SMS's motion as to the breach of contract claim, it similarly denies SMS's motion on the indemnification claim "for all the same reasons."  This claim, just like the breach of contract claim, should be heard before a jury.

As this Court denied SMS's motion on both substantive grounds, it cannot, at this juncture, find that it is entitled to attorneys' fees pursuant to Fla. Stat. § 57.105(7) and accordingly denies SMS's motion on this issue.  SMS's motion rests entirely on disputed issues of material fact, and this Court must deny SMS's motion.

## IV.    IH4 and THR's Motion for Leave to File Second Amended Third-Party Complaint [ECF No. 191]

Lastly, IH4 filed a motion to file a Second Amended Third-Party Complaint on February 14, 2025 – over sixteen months after its original Third Party Complaint [ECF No. 36], filed on October 5, 2023, and over a year after its Amended Third Party Complaint [ECF No. 82], filed on February 7, 2024.  The deadline to amend pleadings in this case was January 18, 2024, discovery in this case closed on September 30, 2024, and all motions for summary judgment were due on November 8, 2024.  [ECF Nos. 60, 112].

IH4 seeks to amend its complaint to add references to the Operative Indemnification

Provision which came into effect on January 1, 2025 ("the Operative Indemnification Provision"), arguing that this provision currently governs IH4's third party claims against SMS. [Mot. to Amend, ECF No. 191 at 8]. IH4 admits, however that it is unsure whether the Operative Indemnification Provision governs their claims against SMS. [*Id.* n.4 (stating that IH4 seeks to add reference to the operative indemnification "to the extent it governs" their claims against SMS)].

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, at this point in the litigation, IH4 may may only amend its pleading "with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Under Rule 15, a court should not grant a party leave to amend where there was "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party or futility of amendment." *Captain v. Bank of Am., N.A.*, No. 18-60130-CIV, 2018 WL 7291055, at *1 (S.D. Fla. May 11, 2018) (cleaned up) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, when, as here, a party files a motion to amend a pleading after the time prescribed in the operative scheduling order, a court must first consider whether good cause exists under Rule 16(b) of the Federal Rules of Civil Procedure. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998). "Good cause" exists when "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *ConSeal Int'l Inc. v. Neogen Corp.*, No. 19-CV-61242, 2020 WL 2494596, at *3 (S.D. Fla. May 14, 2020). "Courts consider three factors in assessing diligence: (1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to the movant; and (3) whether the movant delayed in requesting leave to amend even after acquiring the information." *Id.*

Here, it is clear that IH4 knew about the Operative Indemnification Provision at the time it filed its amended complaint.  The Operative Indemnification Provision was part of an amendment the 2023 Master Services Agreement between IH4 and SMS that went into effect on or around January 5, 2023.  [Mot. to Amend at 6].  The Amended Complaint, filed on February 7, 2024 – more than a year after the 2023 Master Services Agreement went into effect – makes no mention of the 2023 Master Services Agreement, but mentions the Master Services Agreements from 2018 and 2021.  [*See* Am. Compl. ¶¶ 4, 6, 7, 23, 26].  This Courts strongly disagrees with IH4 that it could not have included the Operative Indemnification Provision in the Amended Complaint because it did not come into effect until January of 2025 – IH4 could have included a reference to the 2023 Master Services Agreement *that was in effect when the Amended Complaint was filed*.  It is of no import that the provision did not come into effect until after the Amended Complaint was filed.  Information regarding the 2023 Master Services Agreement was available to IH4 at the time it filed its Amended Complaint, and, as such, IH4 is unable to amend its pleading now.  *See Callwood v. Jones*, 727 F. App'x 552, 558 (11th Cir. 2018) ("Because [the plaintiff] had the information supporting the proposed amendment to the complaint before she filed suit, she has not demonstrated good cause to modify the scheduling order deadline, and the district court did not abuse its discretion by denying her motion to amend.") (cleaned up).

This Court additionally finds that, under Rule 15 (which is not required because IH4 could not clear the Rule 16 hurdle), allowing an amendment at this point – after discovery and summary judgment motions were due – would unduly prejudice SMS and the Court.  "Allowing a newly amended complaint would re-open the pleadings and require Defendants to raise new motions to dismiss, which would significantly tax the parties' and the Court's resources through the briefing and necessary rulings.  [Twenty-Two] months into the case [(and counting)], and the parties would basically have to start all over again and the Court would likely need to reset all the deadlines in the

case, including trial, yet again." *Al -Saadi v. AnnChery Fajas USA, Inc.*, No. 20-CV-23937, 2022 WL 2056802, at *5 (S.D. Fla. May 13, 2022), *report and recommendation adopted*, No. 20-CV-23937, 2022 WL 2174237 (S.D. Fla. June 16, 2022).  Because the 2023 Master Services Agreement was not mentioned in IH4's operative complaint, SMS was not on notice that it may be an issue at either summary judgment or trial and had no reason to conduct any discovery on it.  Thus, allowing amendment now would unduly prejudice SMS at the upcoming scheduled trial.

Because IH4 cannot show good cause for the amendment and the amendment would unduly prejudice SMS (and this Court by further delaying these proceedings), it is not entitled to again amend its complaint.

## CONCLUSION

For the reasons stated, it is **ORDERED AND ADJUDGED** that Johnston-Gebre's Motion for Partial Summary Judgment on the Issue of Liability [**ECF No. 156**] is **GRANTED in part and DENIED in part**; IH4's Motion for Partial Summary Judgment [**ECF No. 154**] is **DENIED**; SMS's Motion for Summary Judgment [**ECF No. 152**] is **DENIED**; and IH4's Motion for Leave to File Second Amended Third-Party Complaint [**ECF No. 191**] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida this April 11, 2025.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record